**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **United States of America,**  Plaintiff,  v.  **Gaige Phillips,**  Defendant. | Criminal No. 5:21-118-KKC-MAS-1  **OPINION AND ORDER** |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on Defendant Gaige Phillips's Motion to Suppress [DE 25], in which Phillips asks the Court to suppress all evidence that was obtained as a result of the search of a storage unit he rented in Lexington, Kentucky. For the reasons stated in this opinion, Phillips's motion is denied.

## BACKGROUND

In early 2021, the Lexington Police Department opened a narcotics investigation, and during the investigation, a confidential informant advised officers that Phillips was the source of narcotics at a residence located at 546 Ohio Street in Lexington, Kentucky. On August 18, 2021, officers executed a search warrant on the Ohio Street residence and during the search they recovered narcotics, guns, and paraphernalia. Officers recovered mail addressed to Adrian Carlisle at 546 Ohio Street, Lexington, Kentucky. Carlisle, who is Phillips's cousin,

was the only person present at the Ohio Street residence when the warrant was executed. Police also located mail addressed to Gaige Phillips at 3049 River Run Trail, Lexington, Kentucky. Carlisle told officers that the house at 546 Ohio Street was Phillips's, and that Phillips allows him to stay there. The police conducted additional research using law enforcement databases, which as recently as July 5, 2021 listed Phillips's address as 546 Ohio Street.

At the time of the search, Phillips was under electronic monitoring surveillance as a condition of release in a prior case, and during the execution of the search warrant on Ohio Street, officers observed Phillips's GPS signal leaving his residence at 3049 River Run Trail and making its way to a storage unit facility at 1120 E. New Circle Road in Lexington, where he remained for around three minutes. Later that same day, officers questioned Phillips's girlfriend, Jazmine Byrd.

Officers contacted employees of the storage facility at 1120 E. New Circle Road, who told the police that Phillips had a storage unit there in his name. The police then sought and received a search warrant for Phillips's storage unit. The affidavit supporting the search warrant application listed the items found during the Ohio Street search and stated:

> Officer Wells advised during the course of his investigation a (QCI) Qualified Confidential Informant advised the source of narcotics, at the location 546 Ohio Street, was Gaige Phillips . . . . Officer Wells stated during conversation with Mr. Adrian Carlisle, Mr. Carlisle stated that 546 Ohio Street was his cousin Gaige's house and Gaige allows him to stay there. Upon further research into police databases, as recent as 07-05-2021, Mr. Phillips has a listed address of 546

> Ohio Street Lexington, KY. 40508. During the execution of the warrant, as surveillance was being conducted on Mr. Phillips, via (EM) electronic monitoring, he was observed leaving a residence located at 3049 River Run Trail and making his way to a storage unit facility located at 1120 E. New Circle Road Lexington, KY 40505. It was relayed that Mr. Phillips only stayed at the storage facility for approximately 3 minutes.
>
> Contact was later made . . . with Mr. Phillips and his girlfriend, Jazmine Byrd . . . . Detective C. Mattox stated during this contact, Ms. Byrd advised Mr. Phillips left the residence, of 3049 River Run Trail, earlier this morning with multiple bags. Ms. Byrd told Detective C. Mattox when Mr. Phillips returned he no longer had the bags. Detective C. Mattox further advised Ms. Byrd stated she noticed a change in Mr. Phillips' behavior and according to Detective C. Mattox, Ms. Byrd described Mr. Phillips' behavior appeared to be as something was wrong and worried/flustered. He would not tell her anything but she could definitely tell something was wrong.

[DE 28-1 (Affidavit in Support of Storage Unit Search Warrant) at 3.]

On August 18, 2021, the same day as the Ohio Street search, officers executed the search warrant on Phillips's storage unit and recovered methamphetamine, cocaine, a firearm, and $78,000 in cash.

On January 6, 2022, a superseding indictment was returned charging Phillips with violations of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 924(c)(1)(A), and 18 U.S.C. § 922(g). Phillips denies the charges, and on March 25, 2022, he filed the instant motion to suppress all evidence obtained from the search of his storage unit.

## ANALYSIS

In his motion to suppress, Phillips challenges the search warrant on two grounds. First, he argues that the search of his storage unit was unlawful under the Fourth Amendment because the search warrant lacked probable cause. Second, Phillips argues that he is entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) because he alleges the affidavit in support of the search warrant contained false statements and omitted material information. The Court will address each of these arguments in turn.

### I. The Storage Unit Search Warrant Did Not Lack Probable Cause

#### A. Probable Cause Standard

The Fourth Amendment requires that a search warrant be issued only upon a showing of probable cause "supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Probable cause consists of "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." " *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). Probable cause for a search warrant exists when "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). The probable cause standard is "not a high bar for

the government to satisfy," *United States v. Bateman*, 945 F.3d 997, 1010 (6th Cir. 2019), because a finding of probable cause requires "only a probability or substantial chance of criminal activity." *United States v. Tagg*, 886 F.3d 579, 585–86 (6th Cir. 2018) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)).

"In determining whether probable cause exists to support a search warrant, the magistrate must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Bass*, 785 F.3d 1043, 1048–49 (6th Cir.), *cert. denied*, 136 S. Ct. 192 (2015) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). When making that determination, the "issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept." *United States v. Bethal*, 245 F. App'x 460, 465 (6th Cir. 2007) (citing *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996)).

When evaluating whether a warrant application presented probable cause, a reviewing court must accord "great deference" to the issuing judge's determination. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). "[A]n issuing [judge's] discretion should only be reversed if it was arbitrarily exercised." *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) (quoting *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)).

A reviewing court should not engage in line-by-line scrutiny of the supporting affidavit, but instead consider whether the totality of circumstances supports a finding of probable cause. *United States v. Brown*, 857 F.3d 334, 339 (6th Cir. 2017). The court must also limit its analysis to the "information presented in the four corners of the affidavit," *Jackson*, 470 F.3d at 306, and "look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit." *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019).

### B. The Nexus Requirement

"[B]ecause the Fourth Amendment requires a search warrant to describe particularly the place to be searched and the persons or things to be seized, the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016). A nexus may be inferred based on "the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (quoting *United States v. Savoca*, 761 F.2d 292, 298 (6th Cir. 1985)). "The connection between the [place to be searched] and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *Brown*, 828 F.3d at 382. Whether the affidavit establishes an adequate nexus is a "fact intensive question resolved by examining the totality of circumstances presented." *Id.*

Phillips argues that the affidavit supporting the storage unit search warrant does not demonstrate a nexus between the storage unit and any criminal activity. According to Phillips, the only concrete and particular information in the affidavit connecting him and his storage unit to drug trafficking or the items recovered from the Ohio Street search are (1) the statement of the confidential informant and (2) statements attributed to his girlfriend, Jazmine Byrd, and Phillips challenges the sufficiency of both. He argues that the affidavit does not provide sufficient information from which the issuing judge could conclude the informant is reliable, and that certain statements attributed to Byrd are false and omit material information.

However, the Court does not need to address the merits of Phillips's objections regarding the confidential informant or statements attributed to Byrd, because the affidavit provides sufficient information to support a probable cause finding even if the confidential informant's statement and the statements attributed to Byrd are excised.[1]

---

[1] The Court acknowledges that Phillips appears to be correct in arguing that merely describing the confidential informant as "qualified" is not enough on its own to allow the "issuing judge [to] conclude independently that the informant is reliable." *United States v. Thomas*, 605 F.3d 300, 308 (6th Cir. 2010). An affidavit relying on hearsay a confidential informant to supply probable cause must contain indicia of the informant's reliability or substantial corroboration of the informant. *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005); *see also United States v. Crumpton*, 824 F.3d 593, 616 (6th Cir. 2016). And though the "facts supporting an independent judicial determination that the informant is reliable . . . need not take any particular form," *Thomas*, 605 F.3d at 307, the affidavit must provide *some* facts showing the informant's reliability. Here, the affidavit in support of the storage unit search warrant included *no information* from which the issuing judge could independently conclude the informant was reliable. Though the Ohio Street warrant describes controlled buys by a confidential informant, the storage unit warrant application did not incorporate the Ohio Street search warrant. Thus, the informant's statement alone would be insufficient to support a finding of probable cause. However, as explained in this opinion, other information provided in the affidavit was enough to show probable cause.

The affidavit includes several facts, excluding the confidential informant's statement, that establish a nexus. The affidavit states that mail was found bearing Phillips's name and address at River Run Trail, that Carlisle told police the Ohio Street residence was Phillips's house, and that police databases listed Phillips's address as 546 Ohio Street as recently as six weeks earlier. That information shows that drugs, guns, and paraphernalia were found at Phillips's house, and that even if it was not his residence, he had been there.

The affidavit then states that during the execution of the Ohio Street search warrant, Phillips was observed via electronic monitoring going to his storage unit and staying for just three minutes. When considering the totality of circumstances, the timing of Phillips's visit to his storage unit and the short time he spent there are enough to support a finding of probable cause. That information shows that narcotics, guns, and paraphernalia were found at a house that belonged to Phillips, that he had been to the house, and that while the search of his house was happening, Phillips went to his storage unit for a mere three minutes. The issuing judge could have determined that the timing of Phillips's brief jaunt was not a mere coincidence, and could have reasonably inferred that Phillips had gone to the storage unit to hide evidence that would connect him to the drug trafficking at his house on Ohio Street.

Phillips argues that the information in the database was not reliable because the affidavit does state what databases were used and because the information was six weeks old. The Court disagrees.

– 8 –

Generally, information obtained from a police computer database can be used to establish probable cause, *Herring v. United States*, 555 U.S. 135, 146–47 (2009), and the name of the database is not necessary to do so. *United States v. Dunning*, No. 7: 15-04-DCR, 2015 U.S. Dist. LEXIS 140216, at *10 (E.D. Ky. Oct. 15, 2015) ("[T]he name of the database was not necessary to establish probable cause."). And though the information in the databases was around six weeks old, Carlisle's statement that the house belonged to Phillips negates any potential staleness issues because it was made the same day as the affidavit. Carlisle's statement also corroborates the database information, and probable cause was thus derived from multiple sources confirming the Ohio Street residence belonged to Phillips.

If considered separately, the individual bits of information in the affidavit might seem less inculpatory. Much of Phillips's argument focuses on the potentially innocent nature of information in the affidavit when each fact is viewed in isolation. But the sufficiency of an affidavit is assessed considering the totality of circumstances, and when considered holistically, the affidavit is more than enough to support a finding of probable cause.

In sum, even if the confidential informant's statement and the statements attributed to Byrd are excised from the affidavit, there was sufficient information from which the issuing judge could have found probable cause to issue the storage unit search warrant. Therefore, to the extent that Phillips seeks to suppress evidence on the ground that the warrant lacked probable cause, his motion is denied.

## II. Phillips Is Not Entitled to a *Franks* Hearing

In his motion to suppress, Phillips requests a *Franks* hearing, alleging that the affidavit supporting the search warrant application contains material false statements and omissions. In *Franks v. Delaware*, 438 U.S. 154, (1978), the Supreme Court held that, in certain circumstances, a criminal defendant is entitled to a hearing regarding the truthfulness of an affidavit used by law enforcement to obtain a search warrant. "If police obtain a warrant using an affidavit containing false statements or a material omission, *Franks* gives a defendant the right to obtain an evidentiary hearing to challenge the warrant's validity." *United States v. Sweeney*, 711 F. App'x 263, 266 (6th Cir. 2017) (*United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013)).

A *Franks* hearing will be held if two requirements are met. First, the defendant must make a substantial preliminary showing that the affiant, or other governmental officers who furnished erroneous information to the affiant, knowingly and intentionally, or with reckless disregard for the truth, made a false statement or material omission in the affidavit. *Franks*, 438 U.S. at 155; *United States v. Rodriguez-Flores*, No. 5:13-97-KKC, 2014 U.S. Dist. LEXIS 136410, at *19–20 (E.D. Ky. Sep. 24, 2014) ("This doctrine applies to statements made by the affiant himself, or other governmental officers who furnish erroneous information to the affiant.") (cleaned up); *United States v. Delgado*, 121 F. Supp. 2d 631, 641 (E.D. Mich. 2000) (collecting cases and holding that "the *Franks* analysis applies not only to the affiant but must extend also to government and police officers who furnish erroneous information to

the affiant as well"). Second, even if the defendant makes that substantial preliminary showing, the offending statement or omission must be necessary to the finding of probable cause. *Franks*, 438 U.S. at 155–56. If probable cause would exist after excising the statement from the affidavit, or if the omission was not critical to the probable cause finding, a *Franks* hearing is not required. *Id.*

### A. False Statements

"The defendant specifically must allege 'deliberate falsity or reckless disregard [on the part] of the affiant.'" *United States v. Hudson*, 325 F. App'x 423, 426 (6th Cir. 2009) (quoting *Franks*, 438 U.S. at 171). "If the defendant alleges an affiant's 'recklessness,' the court employs a subjective test." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). A defendant alleging recklessness must show "the affiant subjectively 'entertained serious doubts as to the truth of his or her allegations.'" *Id.* (quoting *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)) (cleaned up).

Phillips argues that three statements in the affidavit are materially false: (1) that Byrd stated Phillips left the River Run Trail residence with multiple bags; (2) that Byrd stated Phillips returned without the bags; and (3) that Byrd stated it appeared that "something was wrong" with Phillips, that Phillips was worried or flustered, and that Byrd could "definitely tell something was wrong."

As explained below, Phillips has failed to show that any of the allegedly false statements were made deliberately or with reckless disregard for the truth.

1. *"Ms. Byrd advised Mr. Phillips left the residence, of 3049 River Run Trail, earlier this morning with multiple bags."*

As an initial matter, Phillips has failed to show this statement is false—he and the Government agree that Byrd initially told officers that Phillips left the residence with more than one bag. The fact that she subsequently referred only to a single bag does not negate her initial statement that it was more than one bag.

Even if the statement were shown to be false, Phillips has failed to show that either the affiant or the officers that relayed Byrd's statements acted intentionally or with reckless disregard for the truth. Phillips argues Byrd's insistence that there was a single bag "shows that the officers chose to recklessly disregard the content of her statements." [DE 31 at 4.] But Byrd's insistence does not satisfy the subjective standard for showing reckless disregard, which requires Phillips to offer proof that the affiant or other officers "entertained serious doubts as to the truth" of the statement. *Bateman*, 945 F.3d at 1008. Phillips has made no offer of proof, or even an allegation, that any law enforcement officer entertained serious doubts about the truth of the statements in the affidavit.

Phillips has failed to meet his burden to show that this statement is false, or that it was made with reckless disregard for the truth, and he is not entitled to a *Franks* hearing based on this statement.

### 2. *"Ms. Byrd told Detective C. Mattox when Mr. Phillips returned he no longer had the bags."*

Phillips and the Government agree that Byrd did not explicitly state that Phillips returned without any bags. The United States argues that even if she did not explicitly say Phillips returned without the bags, the statement cannot be considered false because Byrd told the police that Phillips left with the bags but did not say he returned with any bags. According to the United States, the "logical inference" is that Phillips did not return with any bags. But even if it may have been to infer that Phillips did not have the bags when he came back from the storage unit, the affidavit does not say that fact was inferred. Instead, the affidavit says that Byrd specifically told Detective Mattox that Phillips came back without the bags. The affidavit attributes a statement to Byrd that the parties agree she did not make, and thus Phillips has made a sufficient preliminary showing that the statement is false.

But even though the statement was false, Phillips fails to offer any proof that the statement was made knowingly and intentionally or with reckless disregard for the truth. Phillips never specifically alleges deliberate falsity or reckless disregard for the truth, as he is required to do in order to succeed on his motion. He appears to suggest that deliberate falsity or reckless disregard is apparent from the fact that "not returning with [bags] is clearly more inculpatory," but that is not enough to meet Phillips's burden. The fact that a false statement makes the affidavit seem more inculpatory does not show the statement was included intentionally or recklessly.

Further, Phillips has failed to show the statement is material. Though the officers falsely attributed the statement to Byrd, whether she explicitly said Phillips returned without the bags or the officer inferred that fact is immaterial to the finding of probable cause. If the affidavit had instead read "Detective C. Mattox inferred from Ms. Byrd's statements that when Mr. Phillips returned he no longer had the bags," probable cause would still exist. Even if the statement were excised from the affidavit entirely, the affidavit contained enough information to support a finding of probable cause, and the statement was therefore not necessary to that finding.

Phillips has failed to make a substantial preliminary showing that the false statement was deliberately included in the affidavit or with reckless disregard for the truth. The false statement is also not essential to the probable cause finding. Thus, Phillips is not entitled to a *Franks* hearing based on this statement.

> **3.   "Ms. Byrd stated she noticed a change in Mr. Phillips' behavior and . . . described Mr. Phillips' behavior appeared to be as something was wrong and worried/flustered. He would not tell her anything but she could definitely tell something was wrong."**

In his initial motion, Phillips argued that Byrd never stated Phillips was acting upset, that something appeared to be wrong, or that Phillips would not tell her anything. [DE 25-1 at 10.] After the United States provided additional body camera footage, Phillips now agrees that Byrd did in fact state that "she could tell something was wrong."

[DE 31 at 5.] It is unclear whether he still argues any other portion of the statement is false.

Even if the statement, or any part of the statement, were shown to be false, Phillips has not alleged that it was made knowingly and intentionally or with reckless disregard for the truth. Without an allegation and offer of proof showing deliberate falsity or reckless disregard, Phillips cannot meet his burden to make a substantial preliminary showing. Further, if the statement were excised from the affidavit, there would still be sufficient information to support a probable cause finding. Phillips has thus not met his burden to be entitled to a *Franks* hearing based on this statement

Because he has failed to make a substantial preliminary showing of deliberate falsity or reckless disregard for the truth as to any of the allegedly false statements, and because those statements were not necessary to the probable cause determination, Phillips has failed to show he is entitled to a *Franks* hearing.

### B. Material Omissions

In addition to false statements, a *Franks* hearing can be justified when there is a material omission in an affidavit. *United States v. Hampton*, 760 F. App'x 399, 404 (6th Cir. 2019) (citing *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998)). "Although material omissions are not immune from inquiry under *Franks*, . . . an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217

(6th Cir. 1997). Thus, the standard to obtain a *Franks* hearing based on a material omission is even higher than the standard for a false statement: "When there is a material omission of fact, a *Franks* hearing is granted only if the defendant 'makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause.'" *Hampton*, 760 F. App'x at 404 (quoting *Mays*, 134 F.3d at 816).

Here, Phillips argues that the affiant made two material omissions: (1) the fact that Byrd initially said Phillips left River Run Trail with "bags," but subsequently stated he left with only one bag; and (2) the fact that Byrd told officers the bag contained clothes.

Phillips has failed to show that either Detective Mattox or the affiant had an intent to mislead the issuing judge by omitting these facts. Phillips appears to argue that intent to mislead should be inferred from the fact that the affidavit appears more inculpatory without these statements. Though Phillips urges the Court to infer such an intent, "[t]he mere existence of omissions alone is ordinarily not enough to make this strong preliminary showing." *Hale v. Kart*, 396 F.3d 721, 727 (6th Cir. 2005). And though "strongly material omissions could provide evidence of an intention to mislead," *id.*, that is not the case here. The omissions at issue are not material, and certainly not "strongly material." "An omission is material if it casts doubt on the existence of probable cause." *Hampton*, 760 F. App'x at 404. The number of bags Phillips took to the storage unit has virtually no bearing on the probable

cause determination—whether it was one bag or one hundred bags, the relevant fact is that Phillips took *something* to his storage unit.

Byrd's statement that the bags, or bag, contained clothes is also not a material fact, much less a critical one. Phillips argues that "[t]he statement in the affidavit that Mr. Phillips left the residence with multiple bags and went to the storage unit is only potentially inculpatory if the contents of those bags are unknown to the officers at the time." [DE 25-1 at 12.] According to Phillips, the officers did know the contents of the bags because Byrd told them the bags contained clothes. But Byrd telling the officers about the content of the bags is not the same as the content of the bags being known to the officers. Byrd's insistence that the bags contained clothes does not definitively establish that as true, and it would be reasonable for an officer or magistrate to infer that Byrd might be lying to protect Phillips. Further, even if Byrd was telling the truth and only saw Phillips with bags of clothes, the clothes could easily have been concealing drugs, guns, or money.

Here, Phillips has failed to meet his burden to make prima facie showing that the statements were omitted with an intent to mislead the issuing judge, or that the omitted statements were critical to the probable cause mix. He has provided no evidence of that intent and failed to show that the omitted statements were material, much less critical, to the probable cause finding. Therefore, he has failed to show he is entitled to a *Franks* hearing based on the allegedly omitted statements.

## Conclusion

The affidavit in support of the warrant in this case would have been sufficient even if the alleged objectionable statements had been excluded and the alleged omitted statements included. If that were the case, the affidavit would state: drugs, guns, and paraphernalia were found at 546 Ohio Street; police databases listed that address as Phillips's just six weeks earlier; Phillips's cousin told police the Ohio Street house belonged to Phillips; Phillips's mail was at the house; during the execution of the search warrant on Ohio Street, Phillips left his residence at River Run Trail and went across town to his storage unit, where he stayed for three minutes; and Phillips's girlfriend told police that Phillips went to the storage unit with one bag and that bag contained clothes. From that information, the issuing judge could have determined there was a fair probability Phillips went to his storage unit to conceal evidence of criminal activity related to the drug trafficking at his house on Ohio Street.

Accordingly, for the reasons stated in this opinion and the Court being sufficiently advised, it is hereby **ORDERED** that Defendant Gaige Phillips's Motion to Suppress [DE 25] is **DENIED** and the evidentiary hearing in this matter scheduled for Wednesday, May 11, 2022, is **SET ASIDE**.

Dated May 9, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY